IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA

v.          CRIMINAL NO. 04-36 ERIE

JEFFREY SCOTT ARTELLO


CHANGE OF PLEA


Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Thursday, February 10, 2005.


APPEARANCES:
CHRISTIAN A. TRABOLD, Assistant United States
Attorney, appearing on behalf of the Government.

THOMAS W. PATTON, Assistant Federal Public
Defender, appearing on behalf of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1          P R O C E E D I N G S

2

3          (Whereupon, the proceedings began at 9:05 a.m., on

4   Thursday, February 10, 2005, in Courtroom C.)

5

6          THE COURT:  Mr. Artello, I'm informed that you wish

7   to change the plea that you previously entered at Counts One

8   and Five at Criminal No. 04-36 to a plea of guilty, is that

9   right?

10          THE DEFENDANT:  Yes, judge.

11          THE COURT:  Before accepting your guilty plea, there

12   are a number of questions that I will ask you to make certain

13   it is a valid plea.  If you do not understand any question,

14  please tell me and I will explain it to you.  If at anytime you

15  wish to consult with Mr. Patton, please tell me that and I will

16  give you the opportunity to consult with him.  I give you these

17  instructions because it is essential to a valid plea that you

18  understand every question before you answer.  Would you please

19  raise your right hand.

20      (Whereupon, the Defendant, JEFFREY SCOTT ARTELLO,

21  was sworn.)

22      THE COURT:  Do you understand that now you have been

23  sworn, your answers to my questions are subject to the

24  penalties of perjury or of making a false statement if you do

25  not answer truthfully?

3

1      THE DEFENDANT:  Yes.

2      THE COURT:  Would you please state your full name?

3      THE DEFENDANT:  Jeffrey Scott Artello.

4      THE COURT:  How old are you?

5      THE DEFENDANT:  Fifty-two.

6      THE COURT:  How far did you go in school?

7      THE DEFENDANT:  High school graduate.

8          THE COURT:  Are you able to communicate in English?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Is that accurate, Mr. Patton.

11         MR. PATTON:  Yes, sir.

12         THE COURT:  Have you taken any drugs or medication

13    or have you drunk any alcoholic beverages in the past 24 hours?

14         THE DEFENDANT:  No, sir.

15         THE COURT:  Are you now or have you recently been

16    under the care of a physician or a psychiatrist?

17         THE DEFENDANT:  No, sir.

18         THE COURT:  Are you now or have you recently been

19    hospitalized or treated for narcotic addiction?

20         THE DEFENDANT:  No.

21         THE COURT:  Do you understand what's happening

22    today?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Does either counsel have any doubt about

25    the competence of this defendant to plead guilty at this time


                              4


1    to the charges contained in the Indictment; Mr. Patton?

2          MR. PATTON:  No, sir.

3          THE COURT:  Mr. Trabold?

4          MR. TRABOLD:  No, your Honor.

5          THE COURT:  Do you have an attorney with you here

6  today?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  What is his name?

9          THE DEFENDANT:  Mr. Tom Patton beside me.

10          THE COURT:  Have you had a sufficient opportunity to

11  discuss your case with him?

12          THE DEFENDANT:  Yes, I have.

13          THE COURT:  Are you satisfied with the work that

14  he's done for you?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you understand that if you continue

17  to plead not guilty and do not change your plea, you would have

18  the right to be assisted by an attorney at the trial of the

19  charge against you?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you understand that if you did not

22  enter a guilty plea and if you qualified financially, you would

23  be entitled to be assisted by an attorney at no cost to you at

24  every phase of the processing of these charges against you?

25      THE DEFENDANT:  Yes.


5


1       THE COURT:  Do you understand that if you did not

2  plead guilty and if there were a trial, under the Constitution

3  and laws of the United States, you would be entitled to a

4  speedy trial by a judge and jury on the charge contained in the

5  Indictment?

6       THE DEFENDANT:  Yes.

7       THE COURT:  Do you understand that if there were a

8  trial, you would be presumed to be innocent at the trial of the

9  charge against you?

10      THE DEFENDANT:  Yes.

11      THE COURT:  And do you understand that if there were

12  a trial, the government would be required to prove your guilt

13  by competent evidence and beyond a reasonable doubt before you

14  could be found to be guilty?

15      THE DEFENDANT:  Yes.

16      THE COURT:  Do you understand that if there were a

17  trial, you would not have to prove that you were innocent?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you understand that if there were a

20   trial, the jury would have to be unanimous in order to find you

21   guilty of the charge?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand that if there were a

24   trial, you would have the right to participate in the selection

25   of the jury; that you would have the right to strike or

6

1   eliminate any prospective juror if it was demonstrated that the

2   juror would be unable to render a fair and impartial verdict;

3   and that you would have the right to strike or eliminate ten

4   jurors from the jury, and one alternate juror, without giving

5   any reason at all for so doing?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that if there were a

8   trial, the witnesses for the government would have to come to

9   court and testify in your presence?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that if there were a

12  trial, your counsel could cross-examine the witnesses for the

13  government, object to evidence offered by the government and

14  then offer evidence on your behalf?

15      THE DEFENDANT:  Yes.

16      THE COURT:  Do you understand that if there were a

17  trial, the government would have to pay witness fees to

18  witnesses which you wished to call on your behalf, if you

19  qualified as being financially unable to do so?

20      THE DEFENDANT:  Yes.

21      THE COURT:  Do you understand that if there were a

22  trial, you would have the right to testify in you chose to?

23      THE DEFENDANT:  Yes.

24      THE COURT:  Do you understand that if there were a

25  trial, you would have the right not to testify and that no

7

1  inference or suggestion of guilt could be drawn from the fact

2  that you did not testify?

3      THE DEFENDANT:  Yes.

4      THE COURT:  If you plead guilty and I accept your

5  plea, do you understand that you will waive your right to a

6   trial and the other rights which I have mentioned to you, that

7   there will be no trial, and that I will enter a judgment of

8   guilt and sentence you on the basis of your guilty plea after

9   considering a presentence report?

10      THE DEFENDANT:  Yes.

11      THE COURT:  If you plead guilty, do you also

12  understand that you'll also have to waive your right not to

13  incriminate yourself, because I will ask you questions about

14  what you did in order to satisfy myself that you are guilty as

15  charged and you will have to acknowledge your guilt?

16      THE DEFENDANT:  Yes.

17      THE COURT:  Now that I have mentioned your rights to

18  you, do you still want to plead guilty?

19      THE DEFENDANT:  Yes.

20      THE COURT:  Have you received a copy of the

21  Indictment naming you and have you discussed with your counsel

22  the charges in the Indictment to which you intend to plead

23  guilty today?

24      THE DEFENDANT:  Yes, I have.

25      THE COURT:  It's Counts One and Five, is that right?

1    MR. PATTON:  That's correct, your Honor.

2    THE COURT:  Do you understand that you are charged

3  in Count One as follows:  "From in and around May 1998, to in

4  and around August 2003, in the Western District of Pennsylvania

5  and elsewhere, the defendants, Maurice Francis Foley, also

6  known as Maurice Hoover, also known as Clarence Lee Oday, II,

7  also known as Luke; John Kirkpatrick, also known as Hatrack;

8  Jeffrey Scott Artello, also known as Fat Man, also known as

9  Tattoo; Eric Thomas Dunn, also known as Sheister; Ann Marie

10  Weber; Paul Andrew Bole; Paul Anthony Butler, also known as

11  Coin Flipper; and Michael Patrick Foley, II, also known as Cuz,

12  did knowingly, intentionally and unlawfully conspire with each

13  other and others whose identities are both known and unknown to

14  the grand jury, to distribute and possess with intent to

15  distribute 100 kilograms or more of a mixture and substance

16  containing a detectable amount of marijuana, a Schedule I

17  controlled substance, and 100 or more marijuana plants,

18  contrary to the provisions of Title 21, United States Code,

19  Sections 841(a)(1), and 841(1)(b)(VII).  All in violation of

20  Title 21, United States Code, Section 846."

21      Do you understand that charge?

22      THE DEFENDANT:  Yes, I do.

23      THE COURT:  Do you understand that as to Count One

24  in order for the crime of conspiracy to distribute and possess

25  with intent to distribute 100 kilograms or more of a mixture

9

1  and substance containing a detectable amount of marijuana, the

2  government must prove all of the following essential elements

3  beyond a reasonable doubt.

4      That two or more persons came to a mutual

5  understanding or agreement to try to accomplish a common and

6  unlawful plan to distribute and/or possess with intent to

7  distribute the controlled substance charged in the Indictment.

8      That the defendant knowingly and willfully became a

9  member of the conspiracy.

10      That marijuana is a Schedule I controlled substance.

11      And that the conspiracy had the specific unlawful

12  purpose of distributing and/or possessing with intent to

13  distribute 100 kilograms or more of a mixture and substance

14  containing a detectable amount of marijuana.

15          Do you understand the elements as to Count One?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Do you understand that the maximum

18   penalty for a violation of Count One is a term of imprisonment

19   of not less than five years to a maximum of 40 years.

20          A fine not to exceed $2 million.

21          A term of supervised release of at least four years.

22          For a second or subsequent felony drug conviction

23   that is final, whether federal, state or foreign; a term of

24   imprisonment of not less than 10 years to a maximum of life.

25          A fine not to exceed $4 million.


                              10


1          A term of supervised release of at least eight

2   years.

3          As well as a mandatory special assessment of $100.

4          Do you understand the maximum penalty for a

5   violation of Count One?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that you are charged

8   in Count Five of the Indictment as follows.  "In and around

9  August 2003, in the Western District of Pennsylvania, the

10  defendant, Jeffrey Scott Artello, also known as Fat Man, also

11  known as Tattoo, after having been convicted on or about June

12  10, 1981, at Docket Number 1828 of 1980, in the Court of Common

13  Pleas, County of Erie, Criminal Division, Commonwealth of

14  Pennsylvania, of the crime of terroristic threats, which is a

15  crime punishable by imprisonment for a term exceeding one year,

16  did knowingly possess in and effecting interstate commerce a

17  firearm as defined in Title 18, United States Code, Section

18  921(a)(3); specifically, a Marlin .22 caliber rifle, Model 25,

19  a Savage .30-30 caliber rifle, Model 340, and a Remington

20  .30-06 caliber rifle, Model 760.

21       In violation of Title 18, United States Code,

22  Section 922(g)(1)."

23       Do you understand that charge?

24       THE DEFENDANT:  Yes.

25       THE COURT:  Do you understand that in order for the


11


1  crime of possessing a firearm by a convicted felon to be

2  proven, the government must prove all of the following

3   essential elements beyond a reasonable doubt.

4        That the defendant was convicted of a crime

5   punishable by imprisonment for a term exceeding one year.

6        That the defendant thereafter knowingly possessed a

7   firearm.

8        And that said firearm was possessed in or effecting

9   interstate commerce.

10       Do you understand the elements as to Count Five?

11       THE DEFENDANT:  Yes.

12       THE COURT:  Do you understand that the maximum

13  penalty for Count Five is a term of imprisonment of not more

14  than 10 years.  However, if it is determined that the defendant

15  has three previous convictions for a violent felony or a

16  serious drug offense, or both, then pursuant to 18 U.S.C.

17  Section 924(e), the term of imprisonment is not less than 15

18  years to a maximum of life.

19       A fine of not more than $250,000.

20       A term of supervised release of three years.

21       As well as a mandatory special assessment of $100.

22       Do you understand the maximum penalty for a

23  violation of Count Five?

24       THE DEFENDANT:  Yes.

25        THE COURT:  Has anybody made any threat to you or to

12

1  anyone else that has caused you to plead guilty today?

2        THE DEFENDANT:  No.

3        THE COURT:  Has there been a plea agreement?

4        MR. TRABOLD:  There is not a plea agreement, your

5  Honor.

6        THE COURT:  All right.

7        MR. TRABOLD:  Your Honor, the only thing I want to

8  mention, there is no plea agreement.  However, the government

9  is not, just so you're aware and I'm putting on the record, is

10  not going to seek a forfeiture of Mr. Artello's property, which

11  would be 11440 State Road, Elk Creek Township, in Erie County,

12  Pennsylvania, Assessor's parcel No. 121-47-5.513.  Just so the

13  court's aware, I'll put on the record the reason we are

14  foregoing forfeiture of Mr. Artello's property is it's not in

15  the government's financial interests to do so, I believe it

16  probably would cost the government more to forfeit the property

17  than the property is ultimately worth.

18        THE COURT:  All right.  Do you understand that the

19    offense to which you are pleading guilty today is a felony

20    offense and that if your plea is accepted, you will be adjudged

21    guilty of that offense and that such adjudication may deprive

22    you of valuable civil rights; such as the right to vote, hold

23    public office, serve on a jury, or possess any type of firearm?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Under the Sentencing Reform Act of 1984,


13


1    the United States Sentencing Commission has issued guidelines

2    for judges to follow in determining sentences in criminal cases

3    for offenses occurring after November 1st of 1987.  Have you

4    and Mr. Patton talked about how the Sentencing Guidelines might

5    apply to your case, and the fact that the guideline ranges are

6    now advisory by virtue of two recent Supreme Court decisions?

7          THE DEFENDANT:  Yes, we've discussed that.

8          THE COURT:  And do you understand that the court

9    will not be able to determine the advisory guideline sentence

10    for your case until after the presentence report has been

11    completed, you and the government have had an opportunity to

12    challenge the facts that are reported by the probation officer?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand that after it has been

15  determined what guideline sentence applies to a case, the judge

16  does have the authority in some circumstances to impose a

17  sentence that is more severe or less severe than that called

18  for by the advisory guideline range?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you understand that under certain

21  circumstances you or the government may have the right to

22  appeal any sentence that I impose?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Do you understand that parole has been

25  abolished, and that if you are sentenced to a term of


14


1  imprisonment, you will not be released on parole?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do you understand that if the sentence

4  is more severe than you expected it to be, you will still be

5  bound by your guilty plea and that you will have no right to

6  withdraw it?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Except for your discussions with Mr.

9    Patton about the Sentencing Guidelines, has anybody made any

10   prediction or promise to you about what your sentence will be?

11         THE DEFENDANT:  No, sir.

12         THE COURT:  Has anything I've said here today

13   suggested to what your actual sentence will be?

14         THE DEFENDANT:  No.

15         THE COURT:  Have you been instructed by your

16   counsel, by government counsel, or by anybody else to respond

17   untruthfully to any question about a promised sentence?

18         THE DEFENDANT:  No.

19         THE COURT:  Did you, as charged in Counts One and

20   Five and as previously read to you by me, commit the offenses

21   as charged?

22         THE DEFENDANT:  Yes.

23         THE COURT:  What would be the government's proof

24   here, Mr. Trabold?

25         MR. TRABOLD:  Your Honor, on April 17th to April

15

1    18th of 2003, the Pennsylvania State Police executed a search

2    warrant at Maurice Foley's residence on Hill Road in

3    Saegertown, Pennsylvania.  That information gleaned from that

4    search, coupled with source information, indicated to the

5    government that Mr. Artello was involved in the Maurice Foley

6    drug enterprise.  One of the primary things that led the

7    government to that conclusion was ledger books and owe sheets

8    were discovered with the notation Fat Man on them.  That the

9    government was able to determine that Fat Man and/or Tattoo was

10    in fact Jeffrey Artello.

11        Subsequent to that search in April, the government

12    executed a search warrant on Mr. Artello's residence on August

13    7th of 2003.  The search of Mr. Artello's residence resulted in

14    the seizure of the weapons listed in Count Five of the

15    Indictment.  And Mr. Artello was in possession of those weapons

16    at a time when he had a previous qualifying felony, federal

17    felony convictions, actually a state misdemeanor conviction.

18        Beyond that information, your Honor, there are a

19    number of cooperating witnesses in this case that indicated

20    that they're aware of Mr. Artello's involvement in this

21    conspiracy.

22        Additionally, Mr. Artello was interviewed around the

23   time his home was searched and revealed that after Maurice

24   Foley's home was searched in April of 2003, he was contacted by

25   Mr. Foley, and Mr. Foley asked him if he would be willing to

16

1   take some of Mr. Foley's personal property and store it at Mr.

2   Artello's house.  Mr. Artello agreed to do that.

3        One of the things that was brought to Mr. Artello's

4   residence was a safe, which was brought to Mr. Artello's

5   residence by John Kirkpatrick, who was known by the nickname

6   Hat or Hat Rack.  Mr. Kirkpatrick brought the safe to Mr.

7   Artello's house, and at various points in time while it was

8   there, gained access to the safe because he knew the

9   combination.  When Mr. Artello was interviewed, he revealed

10   that this safe had been brought to his house and that he had

11   stored it for a period of time.

12        He also revealed that he had, because he was worried

13   about having it there and because the safe was giving off a

14   strong odor of marijuana, he had removed the safe from his

15   property and discarded it into a wooded area not far from his

16  residence.

17       He led authorities to that safe.  There was a search

18  warrant executed on that safe.  That search warrant resulted in

19  the seizure of approximately 30 pounds of marijuana.

20       Beyond all that, the government seized letters from

21  Maurice Foley to Mr. Artello during the course of the search of

22  Mr. Artello's residence.  The letters could only be

23  characterized as highly incriminating because Mr. Foley reveals

24  in the letters that the safe is going to be brought to Mr.

25  Artello's house by Hat Rack.  Mr. Foley somewhat less than


                            17


1  cryptically refers to the safe as A heavy thing with numbers.

2       Mr. Foley in the letters also reveals that he was in

3  possession of a .44 pistol which he had shot on numerous

4  occasions, but could not be traced to him through fingerprints,

5  simply because he had worn gloves during the course of the

6  shooting of the weapon.

7       There are also multiple indications throughout the

8  course of the letters between Mr. Foley and Mr. Artello that

9  Mr. Foley had provided to Mr. Artello something Mr. Foley

10  refers to as doo-doo, which we now know to be methamphetamine.

11  There are indications throughout the letters that Mr. Foley was

12  receiving through the mail or FedEx, packages of

13  methamphetamine.

14      Beyond that, Mr. Artello was debriefed along the

15  lines of his cooperation in this case.  Obviously, he had

16  debriefing sessions which could not be used in our case in

17  chief.  But Mr. Artello has revealed numerous details about his

18  involvement in this case.  Things such as Mr. Foley's storing

19  of hundreds of pounds of marijuana at his residence on a

20  temporary basis.

21      He also revealed to the government that he

22  personally witnessed Mr. Foley storing extremely large amounts

23  of money, hiding that money inside a dashboard, or not a

24  dashboard, windshield wiper components inside a vehicle.

25  There's a whole host of other pieces of information that Mr.

18

1  Artello has revealed about the involvement of other people in

2  this conspiracy.  Primarily John Kirkpatrick, and having

3  received marijuana and/or paying John Kirkpatrick for marijuana

4  in the past.  Thank you.

5      THE COURT:  Mr. Artello, you just heard what Mr.

6  Trabold said by way of summary, do you agree with everything he

7  said?

8      THE DEFENDANT:  Yes.

9      THE COURT:  Because you acknowledge that you are in

10  fact guilty as charged in Counts One and Five and because you

11  know about your right to a trial, because you know what the

12  maximum possible penalty is and because you are voluntarily

13  pleading guilty, I will accept your guilty plea and enter a

14  judgment of guilty on your plea to Counts One and Five of

15  Indictment No. 04-36 Erie.

16      It is, therefore, the finding of the court in the

17  case of United States v. Jeffrey Scott Artello, that this

18  defendant is fully competent and capable of entering an

19  informed plea, and that his plea of guilty is a knowing and

20  voluntary plea supported by an independent basis in fact

21  containing each of the essential elements thereof and,

22  therefore, the plea is accepted and the defendant is now

23  adjudged guilty of the charges contained in Counts One and

24  Five.  Would you please, Mr. Patton, have your client and

25  yourself sign the change of plea.

19

1          (Whereupon, the Change of Plea was executed by the

2   Defendant and Defense Counsel.)

3          THE COURT:  Sentencing will be May 2nd at 10 a.m.

4   A presentence investigation report is going to be prepared in

5   this case, Mr. Artello, it is in your best interests to

6   cooperate with the probation officer in furnishing information

7   for that report, because that report is going to be very

8   important in my decision about what your sentence is going to

9   be.  You and your counsel will have the opportunity and the

10  right to examine the report and make any objections that you

11  think are appropriate.  As I indicated before, the sentencing

12  is set for May 2nd at 10 a.m.

13          What's the present status on bond, does the

14  government have any objection?

15          MR. TRABOLD:  The prosecution has no objection to it

16  continuing.

17          THE COURT:  All right.  We're adjourned.

18

19          (Whereupon, at 9:25 a.m., the Plea proceedings were

20  concluded.)

21

22              - - -

23

24

25


                              20


1            C E R T I F I C A T E

2

3

4        I, Ronald J. Bench, certify that the foregoing is a

5  correct transcript from the record of proceedings in the

6  above-entitled matter.

7

8

9

10  _____

11  Ronald J. Bench

12

13

14

15

16

17

18

19

20

21

22

23

24

25